IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RYAN BROWN | § § | |
| V. | § § | 1:20-cv-0359-DAE |
| UNITED STATES OF AMERICA | § § | |

**ORDER**

Before the Court is Plaintiff's Objections and Motion to Exclude the Expert Testimony of Richard A Watson and Benzel C. MacMaster (Dkt. No. 26); Defendant's Opposition (Dkt. No. 27); and Plaintiff's Reply (Dkt. No. 28-2). The District Court referred the motion to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

**I. BACKGROUND**

This is a lawsuit seeking damages for personal injuries suffered after a motor vehicle accident. Plaintiff Ryan Brown was the front-most driver in a three-car crash on IH-35 that occurred on September 16, 2017. The crash was caused by Matthew Todd Pearcy after he drove into the rear of a Jeep, which in turn collided with Brown's truck. Brown initially left the scene but reported to an emergency room the next morning after pain developed in his neck and back. Brown alleges he has continuously experienced pain and physical disability for the three years following the accident. Pearcy was acting in the course and scope of his federal employment at the time of the collision. Brown filed this suit against the United States under the Federal Tort Claims Act alleging the negligence of Pearcy caused him damages.

Only Pearcy's deposition has been taken in this case prior to the designation of expert witnesses. Dkt. No. 26-8. Pearcy admitted he is at fault for causing the crash, as just prior he had turned his head to look behind him at traffic in the next lane. *Id.* at 24 line 1-25 line 7. When Pearcy

turned his eyes back to the road in front of him, he collided with the stopped Jeep. *Id.* at 24 lines 14-18. Pearcy testified he estimates he was traveling 35 mph just prior to the crash. *Id.* at 27 lines 10-13.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides the standard for determining the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597-98 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under *Daubert*, a trial court acts as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of the testimony, rather than admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the unsupported assertions of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified, an expert's methodology for developing the basis of her opinion must be reliable. *Daubert*, 509 U.S. at 592-93; *Moore*, 151 F.3d at 276. "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is insufficient." *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of his or her opinion is reliable, the underlying methodology must have also been correctly applied to the case's particular facts in order for the expert's testimony to be relevant. *Daubert*, 509 U.S. at 593; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). The party proffering expert testimony has the burden of establishing that the challenged testimony is admissible. FED. R. EVID. 104(A). The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276.

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

### III. ANALYSIS

The Court notes at the outset this case is being tried to the bench, rather than a jury. "Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury." *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). Further, questions about the bases and sources of an expert's opinion generally relate to the weight

that should be given to that opinion rather than the opinion's admissibility. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).

**A.     Watson**

Brown challenges Watson's testimony on three bases: (1) his opinion on causation will not assist the trier of fact and therefore is not relevant; (2) his calculations lack sufficient factual support; and (3) he is not qualified to testify on the causation of Brown's injuries because he is not a physician. The burden on a Daubert motion is on the party offering the challenged expert. *Daubert*, 509 U.S. at 592 n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452 (5th Cir. 2012). The Court's inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted).

The United States has designated Richard Watson to testify as an expert in accident reconstruction and biomechanics. He possesses a Bachelor of Science in Mechanical Engineering from the University of Texas San Antonio and a Masters of Science and Ph.D in Biomedical Engineering from the University of Texas San Antonio/University of Texas Health Science Center San Antonio. He has worked in the fields of accident reconstruction and biomechanics since 2006. He describes his training as follows:

> I have additional training in accident reconstruction, computer modeling, helicopter aircrew operations and aviation maintenance. I have taught the topics of biomechanics and impact biomechanics in university courses to undergraduate and graduate engineering students. I have served as a Guest Instructor for healthcare providers in the United States Air Force Residency in Aerospace Medicine program. I am a certified accident reconstructionist through the Accreditation Commission for Traffic Accident Reconstruction (ACTAR No. 2188).

Dkt. No. 26-1. Watson offered the following summary of his opinion on the accident's causation:

> The collision between the Jeep and the Ford resulted in a delta-v for the Ford between 6 and 7 mph. This is a low severity collision with a less than 0.05% risk of serious injury. The risk for minor neck strain in a collision of this severity is 21.3%. The risk for serious injury remains less than 1% in rear end-crashes with delta-v more than triple my calculation.

*Id.* at 18.

Brown objects to Watson's expert testimony arguing it will not assist the trier of fact on the issue of causation. Brown argues that Watson fails to establish what level of Abbreviated Injury Scale ("AIS") injury took place in the instant collision. Brown argues that Watson is not qualified to assign AIS values to an injury, and that none of the medical records or physicians in this case assign an AIS severity to Brown's injuries. Thus, Brown argues Dr. Watson's opinion about the likelihood of Brown suffering a "serious injury" in the crash is irrelevant to Brown's particular injuries.

The United States responds that Watson's testimony that Brown's vehicle experienced the equivalent of a 6-7 mph impact will aid the Court in determining causation. The United States points out that Watson did not testify that Brown suffered an AIS 2 injury or greater, but instead provided testimony of the relative risk of injury for every level of the AIS, including AIS 1, which is a minor strain. Moreover, the AIS is not a diagnostic tool, but a "an objective value for the retroactive statistical analysis of injuries." Dkt. No. 27-2. The United States maintains that Watson's statistical analysis of the relative risk of injury is relevant to the Court's analysis of the case. Moreover, the United States maintains that the force experienced by Brown himself is neither relevant nor part of the methodology of Injury Causation Analysis.

Next, Brown argues that Watson's force and delta-v mathematical calculations lack sufficient factual support to be admissible under Rule 702. Brown argues that Watson's report fails to account

for various factual considerations in his accident reconstruction and calculation of forces. Dkt. No. 26 at 6-8 (listing 44 factual considerations that Brown argues should have been considered in the report). The United States responds that this laundry list of factors not considered by Watson is arbitrary, meaningless and unsupported by any legal citation or evidence that these facts are relevant, important, or necessary to Watson's analysis.

      Lastly, Brown moves to exclude Watson because he is not a physician. Brown argues that biomechanics experts are limited to testifying on matters of biomedical science, and non-medical experts cannot offer causation opinions on particularized injuries to patients. *See Polston v. Boomershine Pontiac-GMC Truck, Inc.*, 952 F.2d 1304, 1309 (11th Cir. 1992). Brown argues that Watson may not give opinion testimony on the cause of Brown's injuries, or opinions about medical diagnoses, opinions, or treatments provided by Brown's physicians. Brown asserts that Watson improperly offers opinions controverting the causation analysis of Brown's medical expert and treating physician Dean Rushing, asserting that Dr. Rushing is not a trained accident reconstructionist. Brown asserts this opinion intrudes into the area of medical opinion. The United States responds that Watson does not offer medical opinions – rather the opinion about whether an accident of this nature caused the injuries of which Brown complains.

      With regard to Brown's argument that Watson's opinion will not assist the trier of fact in determining causation, the Court finds this argument also fails. Watson seeks to opine on whether the injuries alleged by Brown are consistent with the forces and physical dynamics of the accident that is the subject of his case. Brown argues this testimony is unreliable because Watson testifies about the likelihood of "serious" AIS injuries in low impact crashes, and fails to identify what level of "AIS" injury took place in this case.  This is simply incorrect.  A review of Watson's report shows

that he used the forces at work in this accident to opine on the likelihood of the severity of the injuries on the "AIS" scale, and not the severity of Brown's injuries. The Court finds that Brown's objections here go to the "weight to be assigned to the opinion rather than its admissibility." *Viterbo,* 826 F.2d at 422.

Brown further objects to Watson's testimony as irrelevant because he failed to calculate the delta-v force experienced by Brown within the vehicle. The Court also finds these objections go more towards the weight of the opinion rather than its admissibility. *See Onofre v. C.R. England, Inc.*, 2017 WL 3167325, at *6 (W.D. Tex. Jan. 27, 2017), order vacated in part on reconsideration, 2017 WL 4082366 (W.D. Tex. July 24, 2017) (finding expert testimony not taking into account the torque experienced by the injured occupant of the vehicle admissible under *Daubert*). The Court finds that Dr. Watson's testimony and report on the issue of causation "will help the trier of fact . . . determine a fact in issue." FED. R. EVID. 702(A).

Brown additionally objects to Watson's report claiming his calculations are not based on sufficient factual support. To determine whether testimony is reliable, the court must assess whether the reasoning or methodology underlying the testimony is scientifically valid. *Moore,* 151 F.3d at 276. "This requires some objective, independent validation of the expert's methodology." *Id.* Watson's report reflects that he relied upon photographs of the accident, photographs of the truck, and analysis of exemplar vehicles similar to those involved in the accident. Dkt. No. 26-1. "The use and reliance on photographs is generally accepted in the field of accident reconstruction." *Onofre*, 2017 WL 3167325, at *6. *Daubert* also makes clear that an expert has "wide latitude to offer opinions, including those that are not based on first hand knowledge or observation." 509 U.S. at 592. Brown asserts a veritable laundry list of factors not considered by Watson in an effort to

undermine the factual support of his opinion. However he offers no caselaw or expert testimony that these factors should have been considered in conducting a reconstruction of this type of collision. Watson's use of photographs among other data to consider the damage in the accident in order to formulate an opinion is both reasonable and sufficiently reliable under Rule 702. Brown is free to cross-examine Watson on his failure to consider the other forty-four factors he lists. This issue goes to weight and not admissibility.

With regard to Brown's challenge of Watson's qualifications to give an opinion as to injury causation because he is not a medical doctor, the Court disagrees. Taking into consideration Watson's specialized education and experience, he is qualified to render an expert opinion on the subject of injury causation from a biomedical perspective in this case. Watson is not testifying on the nature of Brown's injuries, only the likelihood of causation. He clearly is qualified to offer such an opinion, and he has a reasonable factual basis for the opinion he has offered.

The Court finds that Dr. Watson is qualified to give opinion evidence on the issue of causation, and that his proffered opinion is reliable and will assist the trier of fact. Therefore, it is admissible under *Daubert*.

**B.     MacMaster**

The United States also offers the testimony of Dr. Benzel C. MacMaster, M.D., on the issue of the reasonableness of the rates of of Brown's medical care. Dr. Benzel is an orthopedic surgeon, who obtained his M.D. from the University of Texas Southwestern Medical School in 1972, and has practiced since 1978. He currently practices in Dallas.

Brown objects to Dr. MacMaster's testimony asserting he lacks knowledge and qualifications on customary medical charges in the geographical region where Brown is being treated – Austin,

Texas. Brown argues that MacMaster's assessments are based on Dallas rates, while Brown is being treated in Austin. Brown argues that while Dr. MacMaster's opinions on the reasonable charges for services in the Austin area are reportedly based on published literature and rates, he does not possess any professional experience or expertise involving Austin billing. The United States counters that Dr. MacMaster is sufficiently qualified to opine on the reasonableness of the rates charged in Austin, Texas, based upon documentation made available by the Centers for Medicare and Medicaid Services, the State of Texas, and the Texas Department of Insurance. Moreover, the United States argues that there are not significant differences between the rates charged in Austin and Dallas. Lastly, the United States argues this would go to the weight rather than admissibility of Dr. MacMaster's testimony. Dr. MacMaster states in his report:

> I have based my opinions on the pertinent published literature, my education and my experiences as an orthopaedic surgeon, certified by the American Board of Orthopaedic Surgery since 1979, who has treated numerous patients with the same or similar injuries during my 39 years of active practice in Dallas, Texas which continues to date, and my knowledge of customary charges associated with medical treatment, services and pharmaceutical products in the Dallas, Texas area. I further certify that I hold an unrestricted license to practice medicine in the State of Texas.

Dkt. No. 26-3 at 28. Dr. MacMaster then goes on to list various published sources relating to Texas upon which he relied in reaching his opinion on the reasonable cost of Brown's care.

The Court finds that as a practicing orthopoedic surgeon in Texas, Dr. MacMaster is qualified to give an opinion about the reasonable cost of medical care in Texas, including Austin and Dallas, and therefore he is not disqualified as a witness. He sufficiently cites his methodology, the information underlying his methodology, and the link between the information and his ultimate conclusion. *See Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). "Vigorous cross-examination" and the "presentation of contrary evidence" are available to address any factual

flaws in his testimony. *Pipitone,* 288 F.3d at 250. The Court declines to exclude Dr. MacMaster's testimony.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Objections and Motion to Exclude the Expert Testimony of Richard A Watson and Benzel C. MacMaster (Dkt. No. 26) is **DENIED.** The Clerk is directed to return thus case to the docket of the Honorable David Ezra.

SIGNED this 29th day of April, 2021.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE